## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELLIE SANCHEZ, KAREN FAIRMAN, DUC LAI,** and **CHRISTINE TRAN,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER UNIVERSITY OF LOUISIANA,**<br><br>Defendant. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiffs Kellie Sanchez, Karen Fairman, Duc Lai, and Christine Tran, individually and on behalf of the Classes defined below of similarly situated persons ("Plaintiffs"), allege the following against Xavier University of Louisiana ("Xavier" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## INTRODUCTION

1.      Plaintiffs bring this class action against Xavier for its failure to properly secure and safeguard Plaintiffs' and other similarly situated Xavier students' and vendors' names and Social Security numbers, or other sensitive records from hackers.

2.      Xavier, based in New Orleans, Louisiana, is a private university that serves more than 3,000 students.

3.      On or about February 2, 2023, Xavier sent out data breach letters to individuals whose information was compromised as a result of the hacking incident ("Data Breach Notification Letters").

4.     On or about February 13, 2023, Xavier filed official notice of a hacking incident with the Attorneys General of, *inter alia*, Maine, Vermont, and Texas.

5.     Based on the notice filed by the university, on November 22, 2022, Xavier experienced a network disruption to its computer systems. In response, the university claims that it immediately began investigating the matter. The Xavier investigation allegedly revealed that an unauthorized party gained access to certain university files (the "Data Breach"). As a result, Plaintiffs and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

6.     Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. This includes names and Social Security numbers (collectively the "Private Information"), which constitute personally identifiable information ("PII") that Xavier collected and maintained.

7.     Armed with the Private Information accessed in the Data Breach, and a head start, data thieves can commit a variety of crimes.

8.     Therefore, Plaintiffs and Class Members have suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

9.     Plaintiffs bring this class action lawsuit to address Xavier's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to directly specify what type of information was accessed.  Telling impacted individuals that "[t]he incident *may* have involved your name and Social Security number" does not provide victims with sufficient notification to know they should take affirmative steps in response to the data security incident. (emphasis added).

10.    The potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Xavier, and thus Xavier was on notice that failing to take

necessary steps to secure the Private Information left that Private Information vulnerable to an attack.

11.    Upon information and belief, Xavier and its employees failed to properly monitor the computer network and systems that housed the Private Information. Had Xavier properly monitored its networks, it would have discovered the Data Breach sooner.

12.    Plaintiffs' and Class Members' identities are now at risk because of Xavier's negligent conduct, as the Private Information that Xavier collected and maintained is now likely in the hands of data thieves and unauthorized third-parties.

13.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14.    Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Xavier's data security systems, future annual audits, and adequate credit monitoring services funded by Xavier.

## PARTIES

15.    Plaintiff Kellie Sanchez is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the City of New Orleans. Ms. Sanchez was a student at Xavier.

16.    Plaintiff Karen Fairman is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the City of Marrero. Ms. Fairman was a Xavier student.

17.    Plaintiff Duc Lai is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the City of New Orleans. Mr. Lai was a Xavier student.

18.    Plaintiff Christine Tran is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the City of New Orleans. Ms. Tran was a Xavier student.

19.    Defendant Xavier is a private university located in New Orleans, Louisiana.

## JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class members is over 100, many of whom have different citizenship from Xavier. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.    This Court has jurisdiction over Xavier because Xavier operates in this District.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and Xavier has harmed Class Members residing in this District.

## XAVIER COLLECTS HIGHLY SENSITIVE CUSTOMER INFORMATION

23.    Founded in 1925, Xavier is the only Catholic historically black university and is the first Catholic university founded by a saint. Xavier serves more than 3,000 Louisiana students. Xavier employs hundreds of people and generates over $130 million in annual revenue.

24.    As a condition of receiving education from the university, Xavier requires that its students entrust it with highly sensitive personal information. In the ordinary course of receiving services from Xavier, students are required to provide sensitive personal and private information, including their names and Social Security numbers. Xavier uses this information to register students for classes and provide student services, among other things. Upon information and belief, Xavier collects the same or similar information from individuals who work for vendors who service Xavier.

25.    In its privacy policy, Xavier promises its students that while it "may disclose to third parties aggregated, anonymous information regarding our sales, traffic analysis and other information regarding the [Xavier website]," "[t]his information will not include personally

identifiable data about you."[1] Xavier also informs students in its privacy policy that it may share personal information with third party agents for limited purposes needed to perform their functions, but those third parties "may not use it for their own purposes."[2] Xavier also assures students in its privacy policy that it has "employed administrative, technical, electronic, and contractual security measures to protect [personal] information from intentional or unintentional use or disclosure."[3]

26.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Xavier assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

27.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

28.     Plaintiffs and Class Members relied on Xavier to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information.

## XAVIER'S DATA BREACH AND NOTICE TO PLAINTIFFS

29.     Plaintiffs were all Xavier students.

30.     According to the university, on November 22, 2022, Xavier experienced a network disruption. Xavier thereafter launched an investigation, which revealed that unauthorized individuals may have acquired PII "without authorization," including names and Social Security numbers for Xavier students and vendors.  Even though the Data Breach Notification Letters specifically identified students and vendors among those effected, media reports speculated that the breach also could have effected employees of the school.[4]

---

[1] Xavier University of Louisiana Privacy Statement, https://www.xula.edu/privacystatement/index.html (last visited Mar. 10, 2023).
[2] *Id.*
[3] *Id.*
[4] Myers, Ben, *Ransomware Gang Says It Leaked Data from Xavier University Students, Staff*, The Times-Picayune (Jan. 2, 2023) *available at*  https://www.govtech.com/education/higher-ed/ransomware-gang-says-it-leaked-data-from-xavier-university-students-staff; *see also Vice Society claims leak of stolen Xavier University data*, SC Media

31.    It is unclear from the Data Breach Notification Letters when unauthorized individuals first gained access to Xavier's systems and how long they had access to Xavier's systems.

32.    Nevertheless, on or about January 2, 2023, media reports announced that: "Vice Society, [a cyber hacking group] which is known for targeting schools with cyber attacks, says it leaked sensitive personal data of students and staff since Xavier University declined to meet its demands after a November ransomware attack."[5]  Vice Society is a notorious hacking group that has targeted over 40 educational institutions in the last 2 years alone.[6]

33.    After this public disclosure, and the leak of Plaintiffs' PII on the dark web, on or about February 2, 2023, Xavier finally began to notify students that its investigation identified that their Personal Information was breached.

34.    Xavier's Data Breach Notification Letters alerted its students and vendors that their PII had been exposed in a "recent data security incident."  The letter provided little detail on what was released, other than to say that "[t]he incident *may* have involved your name and Social Security number."  Nevertheless, media reports have speculated that the breach could have involved additional information as well, stating: "the information could include payroll, personal finances, Social Security numbers, disciplinary actions and misconduct allegations."[7]

35.    The Data Breach Notification Letter claims that Xavier has since "implemented measures to enhance network security and minimize the risk of a similar incident occurring in the future."

---

(Jan. 3. 2023) *available at* https://www.scmagazine.com/brief/ransomware/vice-society-claims-leak-of-stolen-xavier-university-data
[5] *Id.*
[6] *Education sector faces continued Vice Society ransomware attacks*, SC Media (Dec. 7, 2022) *available at* https://www.scmagazine.com/brief/ransomware/education-sector-faces-continued-vice-society-ransomware-attacks
[7] Myers, Ben, *Ransomware Gang Says It Leaked Data from Xavier University Students, Staff*, The Times-Picayune (Jan. 2, 2023) *available at* https://www.govtech.com/education/higher-ed/ransomware-gang-says-it-leaked-data-from-xavier-university-students-staff

36.     The letter then tells individuals that they can receive credit monitoring for an undisclosed duration, but only if they visit the Experian IdentityWorks website to enroll and provide a code on or before April 30, 2023.

37.     The letter also attached a page entitled "Steps You Can Take To Help Protect Your Information," which listed generic steps that victims of data security incidents can take, such as reviewing their accounts and credit reports, getting a copy of a credit report, placing a fraud alert on a credit report, and putting a security freeze on their credit file. Other than providing some period of crediting monitoring that Plaintiffs and Class Members would have to affirmatively sign up for and a phone number at Experian IdentityWorks that victims could contact if they "have questions or need assistance," Xavier offered no other substantive steps to help victims like Plaintiffs and Class Members to protect themselves.

38.     On information and belief, Xavier sent similar generic letters to all individuals affected by the Data Breach.

39.     Xavier had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

40.     Plaintiffs and Class Members provided their Private Information to Xavier with the reasonable expectation and mutual understanding that Xavier would comply with its obligations to keep such information confidential and secure from unauthorized access.

41.     Xavier's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

42.     Xavier knew or should have known that its electronic records would be targeted by cybercriminals.

**XAVIER FAILED TO COMPLY WITH FTC GUIDELINES**

43.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decisionmaking.

44.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

45.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.     On information and belief, Xavier failed to properly implement basic data security practices. Xavier's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

48.    Xavier was at all times fully aware of its obligation to protect the PII of its students and vendors.

## XAVIER FAILED TO COMPLY WITH INDUSTRY STANDARDS

49.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.  Multiple security experts have specifically warned against ransomware attacks from Vice Society in particular.[8]

50.    Some industry best practices that should be implemented by entities like Xavier, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. Upon information and belief, Defendant failed to follow some or all of these industry best practices.

51.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. Upon information and belief, Defendant failed to follow these cybersecurity best practices, including failure to train its staff.

52.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

---

[8] *Education sector faces continued Vice Society ransomware attacks*, SC Media (Dec. 7, 2022) *available at* https://www.scmagazine.com/brief/ransomware/education-sector-faces-continued-vice-society-ransomware-attacks

53.     Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

## XAVIER'S SECURITY OBLIGATIONS

54.     Xavier breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Xavier's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.  Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

      b.  Failing to adequately protect students' and vendors' Private Information;

      c.  Failing to properly monitor its own data security systems for existing intrusions;

      d.  Failing to sufficiently train its employees regarding the proper handling of PII;

      e.  Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

      f.  Failing to comply with the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g) ("FERPA"); and

      g.  Failing to adhere to industry standards for cybersecurity.

55.     Upon information and belief, as a result of computer systems in need of security upgrades, inadequate procedures for handling emails containing viruses or other malignant computer code, and employees who opened files containing the virus or malignant code that perpetrated the cyberattack, Xavier negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

56.     Accordingly, Class Members' lives have been severely disrupted and they now face an increased risk of fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Xavier.

## DATA BREACHES, FRAUD, AND IDENTITY THEFT

57.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[9] Exposure of personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

58.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

59.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to

---

[9] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Mar. 10, 2023).

remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[10]

60.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank fraud.

61.     Identity thieves can also use Social Security numbers and driver's license numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture, use the victim's name and Social Security number to obtain government benefits, or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

62.     A study by the Identity Theft Resource Center[11] shows the multitude of harms caused by fraudulent use of PII:



[10] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited Mar. 10, 2023).

[11] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Mar. 10, 2023).

63.     Moreover, the value of PII is axiomatic. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that PII has considerable market value.

64.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[12]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

65.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

66.     As a result, there is a strong probability that entire batches of stolen information have yet to be dumped on the black market, meaning that Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## PLAINTIFFS' AND CLASS MEMBERS' DAMAGES

67.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

68.     Plaintiffs' Private Information, including sensitive PII, was compromised as a direct and proximate result of the Data Breach.

---

[12] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited Mar. 10, 2023).

69.    As a direct and proximate result of Xavier's conduct, Plaintiffs and Class Members have suffered an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

70.    As a direct and proximate result of Xavier's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

71.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

72.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information, as potential fraudsters could use that information to target schemes at Plaintiffs and Class Members.

73.    The information that Xavier maintains regarding Plaintiffs and Class Members combined with publicly available information allows nefarious actors to assemble a detailed picture of Plaintiffs and Class Members.

74.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiffs and Class Members paid to Xavier was intended to be used by Xavier to fund adequate security of Xavier's data and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class Members did not get what they paid for.

75.    Class Members have spent and will continue to spend significant amounts of time to monitor their accounts and records for misuse.

76.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

        a.    Finding fraudulent charges;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with credit reporting agencies;

d. Spending time on the phone with or at a financial institution to dispute fraudulent charges; and

e. Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

77. Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Xavier, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to making sure that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

78. As a direct and proximate result of Xavier's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have either suffered harm or an increased risk of future harm.

## CLASS ALLEGATIONS

79. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated (the "Class").

80. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**Louisiana State Subclass**

All residents of Louisiana who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

81.     Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

82.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

83.     Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

84.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information provided to the Maine Attorney General, the Class consists of 44,312 students and vendors of Xavier whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Xavier's records, Class Members' records, publication notice, self-identification, and other means.

85.     <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

          a.  Whether Xavier engaged in the conduct alleged herein;

          b.  Whether Xavier's conduct violated the Louisiana Unfair Trade Practices and Consumer Protection Law invoked below;

          c.  When Xavier learned of the Data Breach;

          d.  Whether Xavier's response to the Data Breach was adequate;

e.   Whether Xavier unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f.   Whether Xavier failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.   Whether Xavier's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.   Whether Xavier's data security systems prior to and during the Data Breach were consistent with industry standards;

i.   Whether Xavier owed a duty to Class Members to safeguard their Private Information;

j.   Whether Xavier breached its duty to Class Members to safeguard their Private Information;

k.   Whether hackers obtained Class Members' Private Information via the Data Breach;

l.   Whether Xavier had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m.  Whether Xavier breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n.   Whether Xavier knew or should have known that its data security systems and monitoring processes were deficient;

o.   What damages Plaintiffs and Class Members suffered as a result of Xavier's misconduct;

p.   Whether Xavier's conduct was negligent;

q.   Whether Xavier's conduct was *per se* negligent;

r.   Whether Xavier was unjustly enriched;

> s.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;
>
> t.  Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and
>
> u.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

86.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

87.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

88.  <u>Predominance</u>. Xavier has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Xavier's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

89.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Xavier. In contrast, conducting this action as a Class action presents far fewer management difficulties,

conserves judicial resources and the parties' resources, and protects the rights of each Class member.

90.     Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Xavier has acted or has refused to act on grounds generally applicable to the Class such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

91.     Finally, all members of the proposed Class are readily ascertainable. Xavier has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Xavier.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)

92.     Plaintiffs restate and reallege all of the allegations stated above and hereafter as if fully set forth herein.

93.     Xavier knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

94.     Xavier's duty included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

95.     Xavier knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. Xavier was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

96.    Xavier owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. Xavier's duties included, but were not limited to, the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.  To protect its students' and vendors' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law;

    e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.  To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

97.    Xavier's duty to use reasonable care in protecting confidential data arose not only as a result of the laws described above, but also because Defendant was bound by industry standards to protect confidential PII.

98.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Xavier owed them a duty of care to not subject them to an unreasonable risk of harm.

99.    Xavier, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Xavier's possession.

100.   Xavier, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

101.    Xavier, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

102.    Xavier breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

   b. Failing to adequately monitor the security of its networks and systems;

   c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

   d. Allowing unauthorized access to Class Members' Private Information; and

   e. Failing to detect in a timely manner that Class Members' Private Information had been compromised.

103.    Xavier had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Xavier with their Private Information was predicated on the understanding that Xavier would take adequate security precautions. Moreover, only Xavier had the ability to protect its systems (and the Private Information that it stored on them) from attack.

104.    Xavier's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised.

105.    As a result of Xavier's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

106.    Xavier's breaches of duty caused a foreseeable risk to Plaintiffs and Class Members that they would be harmed by suffering from identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

107.    As a result of Xavier's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

108.    Xavier also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information.

109.    As a direct and proximate result of Xavier's negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of further harm.

110.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

111.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

112.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Xavier to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)**

113.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

114.    Pursuant to Section 5 of the FTCA, Xavier had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information, including PII, of Plaintiffs and Class Members.

115.    Xavier breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to: proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

116.    Plaintiffs and Class Members are within the class of persons that the FTCA is intended to protect.

117.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII. The FTC publications described above and the industry-standard cybersecurity measures also form part of the basis of Xavier's duty in this regard.

118.    Xavier violated the FTCA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

119.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Personal Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Xavier's networks, databases, and computers that stored or contained Plaintiffs' and Class Members' Personal Information.

120.    Xavier's violations of the FTCA constitute negligence *per se*.

121.    Xavier also violated FERPA by releasing student personal information without permission. Xavier's violations of FERPA constitute negligence *per se*.

122.    Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to Xavier's negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

123.    As a direct and proximate result of Xavier's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information (including PII), including but not limited to damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

124.    Xavier breached its duties to Plaintiffs and the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

125.    As a direct and proximate result of Xavier's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

126.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Xavier to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT III**
**BREACH OF CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)**

127.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

128.    Plaintiffs and Class Members entered into a valid and enforceable contract through which they paid money to Xavier in exchange for education. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information.

129.    Xavier's Privacy Policy memorialized the rights and obligations of Xavier and its students. This document was provided to Plaintiffs and Class Members in a manner in which and during a time when it became part of the agreement for services.

130.    In the Privacy Policy, Xavier commits to protecting the privacy and security of PII.

131.    Plaintiffs and the Class Members fully performed their obligations under their contracts with Xavier.

132.    However, Xavier did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' Private Information, and therefore Xavier breached its contract with Plaintiffs and Class Members.

133.    Xavier allowed third parties to access, copy, and/or transfer Plaintiffs' and Class Members' Private Information without permission. Therefore, Xavier breached the Privacy Policy with Plaintiffs and Class Members.

134.    Xavier's failure to satisfy its confidentiality and privacy obligations resulted in Xavier providing services to Plaintiffs and Class Members that were of a diminished value.

135.    As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein.

136.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Xavier to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)**

137.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

138.    This Count is pleaded in the alternative to Count III above.

139.    Xavier provides educational services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for goods and services from Defendant.

140.    Through Defendant's provision of services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information in accordance with Xavier's policies, practices, and applicable law.

141.    As consideration, Plaintiffs and Class Members paid money to Xavier and turned over valuable Private Information to Xavier. Accordingly, Plaintiffs and Class Members bargained with Xavier to securely maintain and store their Private Information.

142.    Xavier violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information.

143.    Plaintiffs and Class Members have been damaged by Xavier's conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

**COUNT V**
**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, LA. REV. STAT. ANN. § 51:1401, *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE LOUISIANA STATE SUBCLASS)**

144.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

145.    As fully alleged above, Xavier engaged in unfair and deceptive acts and practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq* ("Louisiana CPL").

146.    Defendant, Plaintiffs, and the Louisiana State Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

147.    Plaintiff and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

148.    Xavier engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

149.    The Louisiana CPL makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

150.    Defendant participated in unfair and deceptive acts and practices that violated the Louisiana CPL, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Louisiana State Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

26

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Louisiana State Subclass Members' PII, including duties imposed by the FTCA and FERPA, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and Louisiana State Subclass Members' PII, including by implementing and maintaining reasonable security measures; and

e. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Louisiana State Subclass Members' PII.

151.    Xavier's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' Private Information.

152.    Xavier's unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Louisiana State Subclass Members that they could not reasonably avoid. This substantial injury outweighed any benefits to consumers or to competition.

153.    As a direct and proximate result of Xavier's unfair and deceptive acts and practices, Plaintiffs and Louisiana State Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

154.    Plaintiffs and Louisiana State Subclass Members seek all monetary and nonmonetary relief allowed by law, including actual damages, treble damages for Xavier's

knowing violations of the Louisiana CPL, declaratory relief, attorneys' fees, and any other relief that is just and proper.

**COUNT VI**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)**

155.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

156.    This Count is pleaded in the alternative to Counts III and IV above.

157.    Plaintiffs and Class Members conferred a benefit on Xavier by paying for services that should have included cybersecurity protection to protect their Personal Information. Plaintiffs and Class Members did not receive such protection.

158.    Xavier has retained the benefits of its unlawful conduct, including the amounts received for cybersecurity practices that it did not provide. Due to Xavier's conduct alleged herein, it would be unjust and inequitable under the circumstances for Xavier to be permitted to retain the benefit of its wrongful conduct.

159.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Xavier and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Xavier from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class Members may seek restitution or compensation.

160.    Plaintiffs and Class Members may not have an adequate remedy at law against Xavier, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VII**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE LOUISIANA STATE SUBCLASS)**

161.    Plaintiffs restate and reallege the allegations in paragraphs 1-91 as if fully set forth herein.

162.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

163.     Xavier owes a duty of care to Plaintiffs and Class Members, which required it to adequately secure Plaintiffs' and Class Members' Private Information.

164.     Xavier still possesses Private Information regarding Plaintiffs and Class Members.

165.     Plaintiffs allege that Xavier's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

166.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.     Xavier owes a legal duty to secure its students' and vendors' Private Information and to timely notify students and vendors of a data breach under the common law and Section 5 of the FTCA;

b.     Xavier's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect students' and vendors' Private Information; and

c.     Xavier continues to breach this legal duty by failing to employ reasonable measures to secure students' and vendors' Private Information.

167.     This Court should also issue corresponding prospective injunctive relief requiring Xavier to employ adequate security protocols consistent with legal and industry standards to protect students' and vendors' Private Information, including the following:

a.     Order Xavier to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

    b.   Order that to comply with Defendant's explicit or implicit contractual obligations and duties of care, Xavier must implement and maintain reasonable security measures, including, but not limited to:

        i.    engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Xavier's systems on a periodic basis, and ordering Xavier to promptly correct any problems or issues detected by such third-party security auditors;

        ii.    engaging third-party security auditors and internal personnel to run automated security monitoring;

        iii.    auditing, testing, and training its security personnel regarding any new or modified procedures;

        iv.    segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Xavier's systems;

        v.    conducting regular database scanning and security checks;

        vi.    routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a data breach when it occurs and what to do in response to a data breach; and

        vii.    meaningfully educating its users about the threats they face with regard to the security of their PII, as well as the steps Xavier's students should take to protect themselves.

168.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Xavier. The risk of another such breach is real, immediate, and substantial. If another breach at Xavier occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

169.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Xavier if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other related damages. On the other hand, the cost of Xavier's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Xavier has a preexisting legal obligation to employ such measures.

170.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Xavier, thus preventing future injury to Plaintiffs and other students whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein;

b.    Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.    An order instructing Xavier to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.    An order requiring Xavier to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  April 14, 2023                Respectfully submitted,


/s/ *Jon S. McGill Sr.*
Jon S. McGill Sr.
**JSM LAW**
500 Lafayette Street
Gretna, LA 70053
Tel: (504) 208-5551
E: jon@jonsmcgilllaw.com


**SIRI & GLIMSTAD LLP**
Mason A. Barney (*pro hac vice* to be filed)
Steven D. Cohen (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: scohen@sirillp.com