**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| KELLIE SANCHEZ, KRISTIAN GRAVES, and KEVIN HAZURE, JR., *on behalf of themselves and all others similarly situated*, | CIVIL ACTION NO.: 2:23-cv-01269-DJP-DPC |
| Plaintiffs, | JUDGE DARREL JAMES PAPILLION |
| v. | |
| XAVIER UNIVERSITY OF LOUISIANA, | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iv

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 1

II.     SUMMARY OF THE SETTLEMENT ........................................................................ 2

        A.      Settlement Benefits ........................................................................................ 2

                1.      Monetary Relief ................................................................................. 3

                2.      Release .............................................................................................. 4

        B.      The Notice and Claims Process ...................................................................... 4

                1.      Claims ............................................................................................... 5

                2.      Request for Exclusion and Objections ............................................... 5

        C.      Fees, Costs, and Service Awards .................................................................... 6

III.    SUMMARY OF ARGUMENT .................................................................................... 6

IV.     LEGAL AUTHORITY ............................................................................................... 7

V.      ARGUMENT ............................................................................................................. 9

        A.      The Court Should Certify the Proposed Class for Settlement Purposes ............ 9

                1.      The Settlement Class is so Numerous that Joinder is Impracticable ......... 10

                2.      Questions of Law and Fact are Common to the Settlement Class ............. 10

                3.      Plaintiffs' Claims and Defenses are Typical of the Settlement Class ........ 11

                4.      Plaintiffs and Their Counsel Will Provide Fair and Adequate
                        Representation for the Settlement Class ............................................ 12

                5.      Certification is Appropriate Because Common Issues Predominate
                        Over Individualized Ones, and Class Treatment is Superior .................... 13

        B.      The Settlement Terms Are Fair, Reasonable, and Adequate ............................... 14

                1.      Class Representatives and Class Counsel have Adequately
                        Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)) ............................... 15

ii

2. The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)) ................................................................................16

3. The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)) ...........................17

  i. The uncertainty of prevailing on the merits ...................................17

  ii. The effectiveness of the proposed distribution of relief, including the method of processing class-member claims ............18

  iii. The attorneys' fees sought ...........................................................19

4. The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)) ..........................................................20

5. The *Reed* Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval ......................................................20

C. The Proposed Settlement Administrator Will Provide Adequate Notice .............22

D. Appointment of the Settlement Administrator.......................................................24

E. Appointment of Class Representatives ..................................................................24

F. Appointment of Class Counsel ..............................................................................24

VI. CONCLUSION.................................................................................................................25

CERTIFICATE OF SERVICE ....................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)...................................................... 14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................................... 9, 10

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir.2004) .......................................................................................................... 21

*Billittri v. Securities Am., Inc.*,
   Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .............. 23

*Caddick v. Tasty Baking Co.*,
   No. 2:19-CV-02106, 2021 WL 1374607 (E.D. Pa. Apr. 12, 2021) ........................................ 19

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   No. 17-2142, 2020 WL 3288059 (D. Kan. June 18, 2020)...................................................... 19

*Cisneros v. EP Wrap-It Insulation, LLC*,
   No. CV 19-500, 2022 WL 2304146 (D.N.M. June 27, 2022) .................................................. 19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................................................... 8, 21

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) .............................................................................................. 8

*Feder v. Elec. Data. Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ........................................................................................... 12, 15

*Garza v. Sporting Goods Properties, Inc.*,
   No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ................................ 8

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ............................................ 17

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)............................................ 18

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-cv-02372, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)............................................ 13

*Hays v. Eaton Grp. Attorneys, LLC*,
   No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ................................... 14, 15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018).................................................................... 13

*In re Beef Indus. Antitrust Litig.,*
   607 F.2d 167 (5th Cir. 1979) ........................................................................ 7

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   No. 3:20-MN-02972, 2024 WL 2155221 (D.S.C. May 14, 2024) ......................... 18

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 11-CV-1363,
   2012 WL 92498 (E.D. La. Jan. 10, 2012)........................................................ 7

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. June 4, 1997) ..................................................... 19

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ....................................................................... 11

*In re Equifax, Inc. Customer Data Sec. Breach Litigation*,
   No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)............................ 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ....................................................................... 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................. 10, 13, 17

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex. on Apr. 20,*
   *2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) ..................................................... 15

*In re Pool Prods. Distrib. Market Antitrust Litig.,*
   310 F.R.D. 300 (E.D. La. 2015)................................................................... 7, 8

*In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*,
   No. 17-ml-2792, 2020 WL 261671 (W.D. Okl. May 22, 2020)............................. 19

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993)................................................................... 7, 19

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015).................................................................... 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522, 2015 WL 7253765 (D. Minn. Nov. 17, 2015)................................. 21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)........................ 13

*Jenkins v. Raymark Industries, Inc.*,
  782 F.2d 468 (5th Cir. 1986) ................................................................ 13

*Jenkins v. Trustmark Nat. Bank*,
  300 F.R.D. 291 (S.D. Miss. Mar. 25, 2014)........................................... 19

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................... 8

*Kincade v. Gen. Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981) ................................................................... 8

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ............................................................ 16

*Montgomery v. Continental Intermodal Group-Trucking LLC*,
  Case No. 2:19-cv-940, 2021 WL 1339305 (D. N.M. Apr. 9, 2021)........ 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................... 22

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ................................................................. 10

*Nelson v. Constant,* No. 3:20-CV-3,
  042, 2020 WL 5258454 (E.D. La. Sept. 3, 2020) ............................. 9, 11

*ODonnell v. Harris County Texas*,
  No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019)........... 8, 14

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ................................................................. 8

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ................................................................. 14

*Southern Independent Bank v. Fred's, Inc.*,
  No. 2:15-CV-799, 2019 WL 1179396 (M.D. Ala. Mar. 13, 2019)......... 18

*Stirman v. Exxon Corp.*,
  280 F.3d 554 (5th Cir. 2002) ................................................................. 11

*Stott v. Capital Fin. Servs.*,
  277 F.R.D. 316 (N.D. Tex. 2011) .......................................................... 23

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007) ................................................... 17

*Wal-Mart Stores v. Dukes,*
    564 U.S. 338 (2011) ................................................................................................ 11

*Welsh v. Navy Fed. Credit Union*,
    No. 16-CV-1062, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .......................................... 16

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 1

La. Rev. Stat. §§ 51:1401 ................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 ................................................................. 11, 14, 15, 19, 20, 22, 24

Fed. R. Civ. P. 23(a) ........................................................................................ 9, 12

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 10

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 10

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 11, 14

Fed. R. Civ. P. 23(b)(3) ................................................................................ 9, 13, 14, 22

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 22

Fed. R. Civ. P. 23(e) ........................................................................................ 7, 14, 22

Fed. R. Civ. P. 23(e)(1) ........................................................................................ 22

Fed. R. Civ. P. 23(e)(2) ................................................................................ 8, 14, 15, 20

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................ 16

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 20

Fed. R. Civ. P. 23(e)(3) ........................................................................................ 14

**Other Authorities**

2 *McLaughlin on Class Actions,* § 6:7 (15th ed. 2018) .......................................... 15

2 Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992) .......................................... 8

2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992) ......................... 7

*Manual for Complex Litigation*, § 30.44 (4th ed.) ....................................................................... 8

Plaintiffs hereby submit this Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The class action lawsuit concerns a November 2022 security incident (the "Security Incident") impacting Xavier University of Louisiana ("Xavier" or "Defendant") in which an unauthorized third party may have accessed and acquired Plaintiffs' and Settlement Class Members' full names and Social Security numbers (collectively referred to in this Settlement as "Personal Information").[1] Plaintiffs individually filed lawsuits relating to the Security Incident. Thereafter, on October 19, 2023, Plaintiffs Kellie Sanchez, Kristian Graves, and Kevin Hazure, Jr. filed their Amended Class Action Complaint (the "Operative Complaint") against Defendant, asserting claims for negligence, invasion of privacy, breach of implied contract, and violations of Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §§ 51:1401, *et seq.* ("LUTPA"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). (Dkt. No. 22). On November 21, 2023, Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which has been fully briefed. (Dkt. No. 30).

On July 18, 2024, Magistrate Judge Eva J. Dossier issued a report and recommendation ("R&R"), recommending that the Court grant the motion to dismiss as to Plaintiffs' claims for invasion of privacy and breach of implied contract with prejudice but deny the motion to dismiss as to Plaintiffs' claims for negligence, LUTPA, and UCL. (Dkt. No. 53). Magistrate Judge Dossier recommended further that the Court's denial of the motion to dismiss the LUTPA claim be without prejudice to Xavier's right to file a separate motion relative to the argument that the LUTPA does

---

[1] Unless otherwise defined, all capitalized terms have the meaning set forth in the Settlement Agreement.

not permit putative class actions, regardless of the relief sought. *Id*. On August 1, 2024, Xavier filed partial objections to the R&R, and on August 15, 2024, Plaintiffs responded, requesting that the Court accept the R&R and overrule Xavier's objections. (Dkt. Nos. 54 and 59).

The Parties filed a Joint Motion to Stay on November 20, 2024, while Defendant's objections to the R&R were still pending, which this Court granted on November 21, 2024. (Dkt. Nos. 61 and 63). On January 16, 2025, the Parties engaged in a mediation session with Bennett G. Picker, Esq. Mr. Picker is a well-regarded mediator with substantial experience handling data breach class action mediations. *See* Joint Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Counsel Decl.") ¶ 5, attached as **Exhibit 2**. Although a resolution was not reached at the mediation, the Parties subsequently accepted a mediator's proposal for settlement. *Id*. The agreed resolution or settlement is memorialized in the Settlement Agreement ("S.A.") attached hereto as **Exhibit 1**.

Not only does the Settlement grant real relief to Plaintiffs and Settlement Class Members, but it is also within the range of reasonableness necessary to justify granting preliminary approval under Rule 23(e). Accordingly, Plaintiffs submit their Unopposed Motion for Preliminary Approval of Class Action Settlement, and respectfully request that the Court grant preliminary approval; direct that notice be disseminated to Settlement Class Members in the manner outlined below (and pursuant to the Settlement Agreement); set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards and Plaintiffs' Motion for Final Approval; and set a Final Approval Hearing date.

## II.    SUMMARY OF THE SETTLEMENT

### A.    Settlement Benefits.

The settlement creates a $750,000 non-reversionary settlement fund. S.A. ¶ 36. The

Settlement Class Members will be entitled to two separate forms of relief from the Settlement Fund: (1) Reimbursement for up to $5,000.00 of Documented Out-of-Pocket Losses; and (2) a Pro Rata Cash Payment. *Id*. ¶ 49. The Settlement Class is defined as:

> [T]he approximately 44,312 individuals who received direct notification from Defendant that their Personal Information may have been accessed in the Security Incident.

*Id.* ¶ 34. The Settlement Class specifically excludes: (1) Xavier and its officers and directors; (2) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (3) the Court; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge. *Id.*

### 1.    Monetary Relief.

Under the terms of the Settlement Agreement, all Settlement Class Members may submit a claim for reimbursement of Documented Out-of-Pocket Losses up to five thousand dollars ($5,000) per individual. *Id*. ¶ 53. Documented Out-of-Pocket Losses means the unreimbursed costs or expenditures incurred by a Settlement Class Member between November 22, 2022 and the Claims Deadline, as result of the Security Incident, and may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of personal information and/or other issues reasonably traceable to the Security Incident. *Id*. ¶¶ 11, 54.

All Settlement Class Members may also submit a claim for a Pro Rata Cash Payment. *Id*. ¶ 53. After the payment of Settlement Administration Costs, including any Taxes and Tax-Related Expenses, Plaintiffs' Counsel's Fees and Expenses as awarded by the Court, Service Awards, as approved by the Court, and payment of all Valid Claims for Documented Out-of-Pocket Losses,

the Settlement Administrator will make *pro rata* settlement payments of any remaining funds to each Settlement Class Member who submits a Valid Claim. *Id.* ¶¶ 46, 56-57.

### 2. Release.

The release is tailored to the claims that have been pleaded or could have been pleaded in this case, and based on, relating to, concerning or arising out of the alleged Security Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Action. *Id.* ¶¶ 76-79; Joint Counsel Decl. ¶ 9. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Defendant and its affiliates, which relate to the Security Incident. *Id.* ¶ 65; Joint Counsel Decl. ¶ 9.

### B. The Notice and Claims Process.

The Parties mutually agree to, and seek Court approval of, the appointment of Angeion Group, LLC ("Angeion")—a firm with considerable experience in notice and settlement administration, including other data breach settlements—as Settlement Administrator. See Declaration of Michael Lynch of Angeion ("Lynch Decl.") ¶¶ 3, 4, 5, attached hereto as **Exhibit 3**; Joint Counsel Decl. ¶ 20. The Settlement Fund amount provided by Defendant, or on behalf of Defendant, will pay the entirety of the Notice and Administrative Expenses, including the cost of Notice. *Id.* The Notice plan provides for individual direct notice to Settlement Class Members through U.S. first-class mail, to the postal address that Xavier has on record for each Settlement Class Member. Lynch Decl. ¶ 15; Joint Counsel Decl. ¶ 64. Settlement Class Members will be able to submit Claim Forms through the Settlement Website or by mail. Lynch Decl. ¶ 18.

1.    **Claims.**

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt out or object. Settlement Class Members will have until ninety (90) days after the Notice Date to complete and submit their Claim Form, either by mail or online. Joint Counsel Decl. ¶ 3. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.* ¶ 12.

2.    **Request for Exclusion and Objections.**

Settlement Class Members will have up to and including sixty (60) days after the Notice Deadline to object to or to submit a request for exclusion from the Settlement. S.A. ¶ 65. Similar to the timing of the claims process, the timing regarding objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed no later than fourteen (14) days prior to these deadlines. *Id.* ¶ 68.

To be excluded from the Settlement, a Settlement Class Member's request for exclusion must (i) state the Settlement Class Member's full name and current address and signature, and (ii) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class. *Id.* ¶ 65. Any Member of the Settlement Class who does not opt-out shall be bound by the Settlement Agreement.

To object to the Settlement, Settlement Class Members must submit individual objections in writing. Any objection must by in writing and must include: (i) the objector's full name, current address, current telephone number, and be personally signed, (ii) the case name and case number, *Sanchez et al. v. Xavier University of Louisiana,* Case No. 2:23-cv-01269-DJP-DPC, (iii)

documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice he or she received, (iv) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s), (v) copies of any other documents that the objector wishes to submit in support of his/her position, (vi) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and (vii) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of his/her counsel. *Id.* ¶ 71.

### C.    Fees, Costs, and Service Awards.

The Settlement Agreement calls for a reasonable Service Award to each Plaintiff in the amount of $3,500. *Id.* ¶ 29. The Service Awards are meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's questions. Joint Counsel Decl. ¶ 17.

Under the Settlement Agreement, Plaintiffs' Counsel may also seek attorneys' fees of up to one-third of the Settlement Fund, or $250,000. S.A. ¶¶ 20, 48; Joint Counsel Decl. ¶ 18. Class Counsel may also seek reasonable and necessary litigation expenses, not to exceed $25,000, in addition to any fees requested. S.A. ¶ 48; Joint Counsel Decl. ¶ 18. Class Counsel will submit a separate motion seeking Payment of Plaintiffs' Counsel's Fees and Expenses, and Plaintiffs' Service Award no later than fourteen (14) days prior to the Objection Date and Request for Exclusion Deadline. S.A. ¶ 48; Joint Counsel Decl. ¶ 19.

### III.    SUMMARY OF ARGUMENT

Plaintiffs negotiated a fair, reasonable, and adequate settlement that guarantees

Settlement Class Members significant relief in the form of a $750,000 non-reversionary common fund, from which Settlement Class Members may seek substantial monetary payments. *Id.* ¶¶ 7, 25. This putative Settlement Class meets the applicable Rule 23(a)-(b) standards for provisional class certification. The Settlement Agreement is well within the range of possible approval and meets the Rule 23(e) and *Reed* factors for preliminary approval, and for the Court to direct notice to the Class. The Notice program, consisting of direct notice to Settlement Class Members by U.S. Mail, meets all due process considerations and is the best notice practicable under the circumstances. *Id.* ¶ 11.

## IV.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. *See* Fed. R. Civ. P. 23(e). The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 175 (5th Cir. 1979). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (citation omitted). At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012).

The standards at the preliminary approval stage are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. 300,

314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 86 (E.D.N.Y. 2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314-315 (collecting cases).

Plaintiffs seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation*, § 30.44 (4ᵗʰ ed.). Judicial and public policy favor the resolution of disputes through settlement. *See ODonnell v. Harris County Texas,* No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc*., No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' Motion and allow notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992).

## V.    ARGUMENT

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs seek certification of a Settlement Class consisting of "the approximately 44,312 individuals who received direct notification from Defendant that their Personal Information may have been accessed in the Security Incident." S.A. ¶ 34.

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant,* No. 3:20-CV-3042, 2020 WL 5258454, at *4 (E.D. La. Sept. 3, 2020) (citing Fed. R. Civ. P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to

certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified for settlement. *See In re Equifax, Inc. Customer Data Sec. Breach Litigation*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *rev'd on other grounds*, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

### 1.    The Settlement Class is so Numerous that Joinder is Impracticable.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted). Here, the Settlement Class of approximately 44,312 individuals clearly surpasses the threshold required to establish numerosity.

### 2.    Questions of Law and Fact are Common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high: commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland Payment Sys., Inc. Customer Data*

*Sec. Breach Litig.*, 851 F.Supp.2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant,* No. CV 17-14581, 2020 WL 5258454, at *5 (E.D. La. Sept. 3, 2020) (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Here, the commonality requirement is satisfied because Plaintiffs can demonstrate numerous common issues exist. Whether Xavier failed to adequately safeguard the records of Plaintiffs and Settlement Class Members is a question common across the entire class. Issues as to Xavier's data security safeguards are common across the Settlement Class, as the safeguards applied to the data of one Settlement Class Member do not differ from those applied to another.

Other specific common issues include (but are not limited to):

- Whether Xavier failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Security Incident; and

- Whether Xavier's data security systems prior to and during the Security Incident complied with applicable data security laws and regulations;

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs meet the commonality requirement of Rule 23.

**3.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class.**

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citation omitted); Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs' and

Settlement Class Members' claims all stem from the same event—the cybercriminal's attack on Xavier's computer system—and the cybersecurity protocols that Xavier had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' Personal Information. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

### 4.   Plaintiffs and Their Counsel Will Provide Fair and Adequate Representation for the Settlement Class.

The Class Representatives must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they and the Settlement Class seek relief for injuries arising out of the same Security Incident. Plaintiffs and Settlement Class Members all contend that their data was allegedly compromised by Xavier in the same manner. In addition, under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for the same reimbursement of Documented Out-of-Pocket Losses, and the same Pro Rata Cash Payment.

Further, proposed Class Counsel have decades of combined experience as vigorous class action litigators—in particular, in data breach incident litigation—and are well suited to advocate on behalf of the class. *See* Joint Counsel Decl. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to Settlement Class Members. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Certification is Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior.

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

*First*, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc*., 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Xavier had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether Xavier breached that duty. The common questions that arise from Xavier's conduct predominate over any individualized issues.

Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1058-59 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).[2]

*Second*, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the *same* Security Incident. Because the common questions of

---

[2] *See also In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–15 (N.D. Cal. 2018); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-md-02583, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (all finding predominance in data breach class actions).

fact and law that arise from Xavier's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

### B.      The Settlement Terms Are Fair, Reasonable, and Adequate.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id.* 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors—known as the *Reed* factors—for determining whether a settlement was fair, adequate, and reasonable. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements.[3]

---

[3] *See ODonnell,* 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest*

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *See Hays*, 2019 WL 427331, at *8-9; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex. on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions,* § 6:7 (15th ed. 2018). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

### 1. Class Representatives and Class Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).

To satisfy the adequacy of representation requirement, Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other members of the class; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder*, 429 F.3d at 130. Here, Plaintiffs claim that the Class Representatives' Personal Information, like the Personal Information of all Settlement Class Members, has been impacted by the *same* Security Incident, and thus Plaintiffs have the same interests as the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and

---

*Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state: "The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

approving pleadings, assisting in the investigation of the case, reviewing the Settlement documents, and answering counsel's many questions.

Class Counsel has also vigorously pursued the interests of the Settlement Class in securing a settlement that brings immediate, considerable relief to the Settlement Class while avoiding the risks, costs, and delay of continued litigation. In doing so, they relied on their extensive experience in data breach litigation, their detailed investigation of this matter, and informal discovery exchanged during the course of negotiations. Joint Counsel Decl.¶ 22.

**2.    The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)).**

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Here, there is no evidence of fraud or collusion that could possibly be presented. The negotiations here occurred at arm's length by experienced litigation counsel, included a full day mediation session with an experienced, neutral third-party mediator, and are presumed to be fair, reasonable, and adequate. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). After hard-fought negotiations, the Parties reached an agreement on the principal terms of the Settlement. The Parties continued to negotiate the details of the Settlement Agreement and its exhibits over many weeks. The negotiations were adversarial, but professional. The negotiations furthered the Settlement Class's interests, given the substantial relief achieved on behalf of the Settlement Class. The Settlement Agreement, Notices, Claim Form, and other exhibits were finalized in March 2025.

Moreover, the proposed Settlement does not favor any Settlement Class Member or group of Settlement Class Members, which also weighs against any evidence of fraud or collusion and

16

in favor of approval. *See Vaughn v. Am. Honda Motor Co*., 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007).

> **3.** **The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).**

Most importantly, the Settlement guarantees Settlement Class Members real, meaningful relief. The settlement provides for a generous $750,000 non-reversionary common fund. S.A. ¶ 44. The Settlement Class Members will be entitled to claim: (1) reimbursement for up to $5,000.00 of documented Out-of-Pocket Losses ; and (2) a Pro Rata Cash Payment. *Id.* ¶¶ 53, 56.

These Settlement terms are consistent with, and in some instances exceed, agreement terms approved by Courts in similar data breach cases. *See e.g. Chatelain et al. v. C, L and W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (42nd Dist. Tex. Taylor Cnty., Feb. 24, 2021) (data breach settlement providing 12 months of credit monitoring services and no expense reimbursements). Data breach settlements are often evaluated on a "per person" recovery basis, and the $17 per person recovered here ($750,000.00 divided by 44,312 Settlement Class Members) meets or exceeds many other finally approved data breach settlements throughout the United States, including the Fifth Circuit. *See* Joint Counsel Decl. ¶ 8.

> *i.* *The uncertainty of prevailing on the merits.*

While Plaintiffs believe they have solid claims and will prevail, success is not guaranteed, especially where serious questions of law and fact exist, which is common in data breach litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") (collecting cases). While Plaintiffs strongly believe in the merits of their case, they also understand that Xavier will assert a

number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs will have to immediately survive Defendant's objections to the magistrate's R&R on Defendant's Motion to Dismiss to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that Plaintiffs will have to meet—and one that has been denied in other cybersecurity incident cases. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972, 2024 WL 2155221, at *1 (D.S.C. May 14, 2024); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, damages methodologies in data breach cases, while sound in Plaintiffs' view, remains untested in a class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis in a data security incident case is rife with uncertainty. *See Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (denying *Daubert* and class certification motions, holding that causation was not met in data breach case). The ability to maintain class certification through trial is also another hurdle Plaintiffs will have to meet. It is obvious that Plaintiffs' success at trial is far from certain. Through settlement, Settlement Class Members gain significant benefits without the risk of receiving no relief at all.

### *ii.    The effectiveness of the proposed distribution of relief, including the method of processing class-member claims.*

"Under this factor the court, 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be altered to whether the claims process is unduly demanding.'" *Montgomery v. Continental Intermodal Group-Trucking LLC*, Case No. 2:19-cv-

940, 2021 WL 1339305, at *4 (D. N.M. Apr. 9, 2021). Here, the method of processing claims is "simple, straightforward, and nonburdensome." *In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*, No. 17-ml-2792, 2020 WL 261671, at *16 (W.D. Okl. May 22, 2020) (slip op.). Settlement Class Members may either submit a Claim Form online or submit a paper Claim Form. Here, "the proposed method of distribution allows for rapid distribution of benefits to Participating Class Members and is not unduly demanding." *Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500, 2022 WL 2304146, at *6 (D.N.M. June 27, 2022) (slip op.).

In addition, all Settlement Class Members will receive individualized notices and have the opportunity to opt out of or object to the Settlement. *See Caddick v. Tasty Baking Co.*, No. 2:19-CV-02106, 2021 WL 1374607, at *6 (E.D. Pa. Apr. 12, 2021) (slip op.). Moreover, the distribution relief is effective. The Settlement Administrator will pay Valid Claims by check or electronic method within thirty (30) days after the Effective Date. S.A. ¶ 54; *see Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020) (checks distributed by hand and/or by mail met Rule 23 requirement).

### iii.    The attorneys' fees sought.

Class Counsel intends to seek an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, or $250,000, plus reasonable litigation expenses not to exceed $25,000. S.A. ¶ 20, 48; Joint Counsel Decl. ¶ 18. Attorneys' fees requests of one-third or more are regularly granted by courts within the Fifth Circuit. *See, e.g., In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993) (awarding fees of one-third of a $170 million common fund class action settlement); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1142 (W.D. La. June 4, 1997) (approving a 36% fee of a $127 million common fund class action settlement); *see also Jenkins v. Trustmark*

*Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. Mar. 25, 2014) (approving fees of 33.33% of a $4 million common fund class action settlement) (collecting additional cases).

### 4.    The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to make a claim for up to $5,000 of Documented Out-of-Pocket Losses, as well as the same Pro Rata Cash Payment. And, as stated above, while Plaintiffs will each be seeking a $3,500 service award, this is less than what any given Settlement Class Member can claim in expense reimbursements *alone* (not considering the *pro rata* cash payment) and is justified by the benefits brought to the Settlement Class by the efforts of Plaintiffs. Thus, the Settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.

### 5.    The *Reed* Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval.

The factors considered by Fifth Circuit courts prior to the amendment of Rule 23, and still considered by those courts today, also weigh in favor of preliminary approval.

*First,* as discussed at length above, there is no evidence of fraud or collusion between the Parties. In fact, the Settlement was only reached after arm's length, good faith negotiations between the Parties and their highly competent counsel.

*Second,* continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, Plaintiffs anticipate incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiffs would likely need to defeat a motion to dismiss, counter a later motion for summary judgment, and both gain and maintain certification of the class. The level of additional costs would

significantly increase as Plaintiffs began their preparations for the certification argument and, if successful, a near inevitable interlocutory appeal attempt. If Plaintiffs survive these rounds of briefing and possible interlocutory appeals, a trial will ensue, with likely appeals to follow. Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rem'd*, 847 F.3d 608, 614 (8th Cir. 2017) (holding district court did not conduct a "meaningful analysis of class certification" issue).

*Third*, the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Xavier's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir.2004); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 2007).

*Fourth,* continued litigation presents substantial risks. As set forth above, while Plaintiffs are confident in the merits of their claims, they face significant risk in continued litigation due to Xavier's outstanding objections to the Report and Recommendation on Defendant's Motion to Dismiss and due, in part, to the constantly evolving nature of data breach litigation. Indeed, Plaintiffs' path to recovery through litigation is full of risks, *e.g.*, pleadings stage, class certification stage, proving causation and liability, maintaining class certification through trial, each, by itself, could impede the successful prosecution of this matter through trial and eventual appeals, potentially resulting in zero recovery.

*Fifth,* the Settlement provides for recovery that equals or surpasses that of similar Settlements approved by Courts across the country. *See* Joint Counsel Decl. ¶ 8.

*Sixth,* while this factor is most appropriately examined after the class has been issued notice and had a chance to respond, Plaintiffs have no reason to believe there will be any antagonism to the Settlement. Proposed Class Counsel, with their depth of experience in litigating data breach class actions, maintain that the Settlement provides significant relief to Settlement Class Members, and Plaintiffs strongly believe that it is favorable for the Settlement Class and is fair, reasonable, adequate, and worthy of preliminary approval.

Thus, the additional *Reed* factors also weigh in favor of preliminary approval.

## C.    The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 318 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Due Process clauses of the United States and Louisiana Constitutions, Federal Rule of Civil Procedure 23, the *Manual for Complex Litigation*. *See* **S.A. Exs. B-C**. Here, the Settlement provides for direct and individual notice to be sent via first class mail to each Settlement Class Member. Lynch Decl. ¶ 15.  Prior to mailing, the addresses will be checked for

accuracy using various databases. Notices returned as undeliverable will be remailed. *Id.* ¶ 16.

Important documents – including the Long Form Notice and the Settlement Agreement – will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. S.A. ¶ 37; Lynch Decl. ¶ 17. The Settlement Administrator will also make a toll-free telephone number and case specific Settlement Website available for settlement-related inquiries. *Id.* ¶ 64(u); Lynch Decl. ¶¶ 17, 20.

The Notices themselves are clear and straightforward. Their design is consistent with the Federal Judicial Center's "illustrative" forms of model plain notice language. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Awards for the Class Representatives, as well as the amount that proposed Class Counsel intends to seek in fees and expenses; explain procedures for making claims, objections, and requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery, and; describe the date, time, and place of the Final Approval Hearing. *See* S.A. Exs. B-C.

The proposed direct mail notice is the gold standard and is consistent with other notice programs approved in the Fifth Circuit. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to class members by first class mail); *Billittri v. Securities Am., Inc.*, Nos. 3:09-cv-01568, 3:10-cv-01833, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. *See* Lynch Decl. ¶ 26. Accordingly, the notice provides

due process under the United States, and Louisiana Constitutions, complies with Rule 23 requirements, and should be approved by the Court. *See Id.*

### D.    Appointment of the Settlement Administrator.

In connection with the Notice plan and settlement administration, the Parties request that the Court appoint Angeion to serve as the Settlement Administrator. Angeion has considerable experience in notice and settlement administration, including other data breach settlements will be able to meet the obligations imposed on the Settlement Administrator under the Settlement Agreement for a reasonable cost. Joint Counsel Decl. ¶ 20.

### E.    Appointment of Class Representatives.

Plaintiffs should be provisionally appointed as Class Representatives for the purpose of the Settlement. Throughout the duration of the litigation, Plaintiffs have faithfully and continuously represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the Settlement Class. *Id*. ¶ 23. Here, Plaintiffs have alleged that their Personal Information, like that of Settlement Class Members, has been impacted in the *same* Security Incident. *Id*. Accordingly, Plaintiffs have the same interests as Settlement Class Members. Moreover, Plaintiffs have capably represented the Settlement Class—including by assisting Class Counsel with the investigation of the case, reviewing and approving pleadings, maintaining contact with Class Counsel, and answering Class Counsel's many questions. *Id*. Finally, Plaintiffs have been informed about the nature of a class action and the potential advantages and disadvantages to them by proceeding in a class action rather than individually.

### F.    Appointment of Class Counsel.

Plaintiffs request the appointment of Terence R. Coates of Markovits, Stock & DeMarco, LLC, Mason A. Barney of Siri & Glimstad LLP, and Gary M. Klinger of Milberg Coleman Bryson

Phillips Grossman, PLLC, as Class Counsel. As outlined in the Joint Declaration of Class Counsel, Proposed Class Counsel have extensive experience prosecuting class actions and other complex cases—in particular, data breach cases. Class Counsel have adequately represented the Settlement Class, including by briefing a response to Defendant's Motion to Dismiss, and engaging in hard fought, arm's length negotiations to reach an excellent Settlement for the Settlement Class, which is outlined in this memo.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, reasonable, and adequate settlement that guarantees Settlement Class Members significant relief in the form of monetary payments and information security improvements. The Settlement Agreement is well within the range of possible approval. For these and the above reasons, Plaintiffs respectfully request this Court to certify the class for settlement purposes, direct Notice be issued to the Settlement Class, and grant their Motion for Preliminary Approval of Class Action Settlement.

Date: April 8, 2025                                  Respectfully submitted,

/s/ Terence R. Coates
Terence R. Coates (admitted *pro hac vice*)
Justin C. Walker (*pro hac vice* to be filed)
Dylan J. Gould (*pro hac vice* to filed)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

/s/ Jon S. McGill
Jon S. McGill, Sr. (#36227)
JSM LAW
500 Lafayette Street
Gretna, LA 70053
Tel: (504) 208-5551

jon@jonsmcgilllaw.com

Mason A. Barney (admitted *pro hac vice*)
Tyler J. Bean (*pro hac vice* to be filed)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
Email: gklinger@milberg.com

*Counsel for Plaintiffs and the Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 8, 2025, I served the foregoing document upon all parties

through their counsel of record by filing it with this Court's electronic-filing system in

accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/ Terence R. Coates
Terence R. Coates (admitted *pro hac vice*)